## Case No. 4,581.

### Ex parte EVERTS.

[1 Bond, 197;[1] 7 Am. Law Reg. 79.]

Circuit Court, S. D. Ohio. Oct. Term, 1858.

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

M. H. Tilden, for relator.,
Johnson & Carroll and Mr. Howard, for respondents.

OPINION OF THE COURT. Truman C. Everts, the relator, has filed his petition in this court, for a writ of habeas corpus, averring that he is a citizen of Kentucky, and that in 1849 he was married at Dayton, Ohio, to Eloise H. Morrison, and that in September, 1850, a daughter was born to the parties, named Bessie; that in September, 1856, by reason of the improper conduct of the wife, a separation took place between the parties at Toledo, Ohio, about which time the wife admitted that she had been guilty of adultery; that the said Everts then took charge of the daughter, and removed to the city of New York, where the child was placed in the keeping of his relatives, who, from their wealth and respectability, were fitted to take charge of her nurture and education; that she was placed at school, and was in all things well cared for, happy, and making rapid progress in her education; that in June, 1858, upon the petition of his wife, a proceeding of which he had no notice, and upon allegations which were altogether false, the court of common pleas of Montgomery county, Ohio, rendered a decree annulling the marriage contract between the parties; that while the said Everts was absent in Kentucky, his wife and other persons clandestinely, forcibly, and against the will of the child, abducted her from the school at which she had been placed, and the custody of those having charge of her, and removed her to Dayton, where she is forcibly and unlawfully detained by Mrs. Everts, Lenox Compton, and Fielding Lowry. The prayer of the petition is, that a writ of habeas corpus issue, requiring the said parties forthwith to produce the said child, with the cause of her detention; and that on the final hearing, she may be restored to the care and custody of the petitioner.

A writ of habeas corpus issued from this court, according to the prayer of the petition, which has been served on the parties; and they have appeared and filed their answers. Lowry states, in his answer, that the child is not, and has not been, since the filing of the petition, in his custody or under his control. Compton answers, in substance, that he is the stepfather of Mrs. Everts, who brought the child to his residence, near Dayton, in June last, where she has since remained with her mother; and that he is willing, and has the pecuniary ability to take care of and provide for her till she is of age. He does not claim the right to detain the child, and alleges that she there is, and has been, under the exclusive control and authority of her mother.

Mrs. Everts answers, denying all the allegations of fault or impropriety of conduct on her part, as set out in the petition. She admits the custody of the child, and claims the legal right to retain her in charge, as her mother; and also on the ground of the decree of the court of common pleas of Montgomery county, dissolving the marriage contract between her and her husband, and giving to her the custody of the child. She exhibits the record of the proceedings in her application for divorce, from which it appears that Everts being, as averred, a resident of the city of New York, a summons and copy of the petition was addressed by mail to him at New York, and publication made of the filing of the petition in a newspaper printed at Dayton, in accordance with the statute of Ohio. She also avers that the facts set forth in her petition as the grounds of the decree are true, and were substantiated by sufficient and credible testimony, and that there was no fraud or illegality in the proceedings resulting in such decree. [This statement presents, briefly, the points arising in this unfortunate controversy, as exhibited in the petition of the relator, and the answers of the respondents. Upon these, the inquiries are: First, is the decree of the court of common pleas of Montgomery county, dissolving the marriage contract between the parties, and awarding alimony and the custody of the child to Mrs. Everts, so far conclusive as to preclude inquiry into the facts on which the decree was based, and the evidence touching the question, whether the husband or the wife is the more suitable person to have the custody and control of the daughter; and, second, if the decree is not conclusive, whether from the facts before the court, there is sufficient warrant for the order prayed for by the relator, that the child be taken from the possession of the mother, and transferred to that of the father.] [2]

Upon the facts thus presented, the court must first consider the grave question of its jurisdiction to take cognizance of this case, and make the order prayed for by the relator, even conceding the case made by him in the petition to be sustained by the evidence. It is strenuously insisted by counsel that this jurisdiction does not exist, and that, therefore, it is the plain duty of the court to dismiss the petition. It is, perhaps, to be regretted that this question was not made upon the application for the writ, and before the parties had incurred the expense of taking

---

[2] [From 7 Am. Law Reg. 79.]

the great mass of evidence on file. But it is not too late now, as the want of jurisdiction is not waived by the appearance of the parties, and the presentation of the defense on other grounds.

The question indicated has been argued at great length, and with much ability. In support of the jurisdiction of the court, probably every authority bearing on the question has been adduced, and the cases and principles referred to have been amplified and enforced with great ingenuity and learning. And I enter upon its consideration with a proper sense of its importance, and of the responsibility assumed in its decision. I may add, that I deeply regret the unavoidable absence of the circuit judge at the hearing in this case, which has deprived the parties of the benefit of his great learning and mature judicial experience in the determination of this question.

In the outset, I may remark that it is distinctly conceded by the counsel for the relator that the court must find its warrant for the jurisdiction claimed in the constitution and laws of the United States. No principle can be more definitively settled than that the courts of the Union, from the highest to the lowest, are courts of limited jurisdiction, in the sense that they can call into action no powers not expressly conferred by law, or incidental to those granted. Thus, in Ex parte Bollman, 4 Cranch [8 U. S.] 75, Chief Justice Marshall says: "Courts which originate in the common law, possess a jurisdiction which must be regulated by the common law, until some statute shall change their established principles; but courts which are created by written law, and whose jurisdiction is defined by written law, can not transcend that jurisdiction." This principle, thus established at an early day by the supreme court, applicable to the jurisdiction of the courts of the United States, has, in numerous cases, received the sanction of that court.

The question now under consideration must, therefore, be decided with reference to the legislation of congress, defining the jurisdiction of the federal courts in cases of habeas corpus. [But, before noticing the statutory provisions on this subject, it may be well to state the precise character of the detention or imprisonment alleged by the relator to be unlawful, and as a remedy for which the action of this court is sought. The case there briefly stated, as made in the relator's petition, is that of a father living separate from his wife, asserting a legal right to the custody of a female child of the age of eight years, who, he alleges, is illegally detained by the mother. For the purposes of the present inquiry, it is not material to refer to the facts involved in this unfortunate domestic controversy. The sole question now under consideration is, whether, supposing the case as presented in the petition of the relator to be sustained by the evidence, the interposition of this court, through the writ of habeas corpus, can be legally invoked.] [2]

The claim for the exercise of jurisdiction in this case is based mainly on section 14 of the judiciary act of 1789 (1 Stat. 81). This section provides "that all the beforementioned courts of the United States (the supreme court and the circuit and district courts) shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary to the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. And either of the justices of the supreme court, as well as judges of the district courts, shall have power to grant writs of habeas corpus, for the purpose of an inquiry into the cause of commitment: provided, that writs of habeas corpus shall in no case extend to prisoners in jail, unless where they are in custody, under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify."

The question arising on the clause of the foregoing section, granting the power to the courts of the United States to issue the writ of habeas corpus, is, whether the limitation expressed in the words, "all other writs not specially provided for by statute, which may be necessary to the exercise of their respective jurisdictions," is applicable to the writs of scire facias and habeas corpus, previously named. The learned counsel for the relator insists that the power to grant the two writs specifically named, is distinct and independent, and not affected or controverted by the limitation to "other writs" necessary to the exercise of the jurisdiction of the courts. On the other hand, it is claimed, in an argument of great force, that the words of limitation referred to, apply as well to the writs designated as to all other writs; and that the writs authorized under that clause are such only as are necessary to the just exercise of the jurisdiction of the courts. If this construction of the statute is sustainable, it is clear this court has no authority to act in the case made in this petition, and must necessarily order its dismissal.

It is not a matter that should excite surprise, that no case is found in the reports of the supreme court of the United States, in which an authoritative construction has been given to the clause of the statute under consideration. The supreme court, as decided in Ex parte Barry, 2 How. [43 U. S.] 65, has no original jurisdiction under that clause to issue the writ of habeas corpus. While, therefore, there have been numerous applications to that court for the writ of habeas corpus, they have been based on the latter clause of the section, and have involved only the exercise of the revisory power of the court, in passing on the legality and validity

[2] [From 7 Am. Law Reg. 79.]

of commitments and imprisonments under the orders or process of inferior courts.

In the case of Ex parte Bollman, before referred to, this question was not involved; but Chief Justice Marshall, in giving the opinion of the court, refers to it, though he does not expressly decide it. He remarks, that "the only doubt of which this section (14) can be susceptible is, whether the restrictive words of the first sentence limit the power to the award of such writs of habeas corpus as are necessary to enable the courts of the United States to exercise their respective jurisdictions in some causes which they are capable of deciding. It has been urged that in strict grammatical construction, these words refer to the last antecedent, which is 'all other writs not specially provided for by statute.'" And he adds, "this criticism may be correct, and is not entirely without its influence; but the sound construction which the court thinks it safer to adopt is, that the true sense is to be determined by the nature of the provision and by the context." This is a clear intimation, that as a question of mere grammatical construction it is not free of doubt, and availing myself of the hint given by the chief justice, I have endeavored to attain a conclusion as to the sense of the clause from its nature, and its connection with other parts of the section.

And, in the first place, it is worthy of remark that the power to award the writs of scire facias and habeas corpus, in the first part of the section, is "to all the before-named courts of the United States," meaning the supreme, circuit, and district courts. It is to be noticed that all the courts are placed on a footing of equality as to their power to grant the writs named or referred to. Now, it is most obvious that the grant of this power to the supreme court is not within the cases enumerated in the constitution of the United States, in which that court can exercise original jurisdiction. That court, in the case Ex parte Barry [supra], expressly decided that it had no original jurisdiction to issue the writ of habeas corpus, in the case of a child alleged by the father to be illegally detained in the custody and possession of the mother. There is no room for a doubt as to the correctness of this decision. That court long since decided that congress could not confer upon it original jurisdiction in any case not within the specifications in the constitution.

On the ground taken by the counsel for the relator, the clause of the statute under consideration authorizes all the courts named to grant the writ of habeas corpus in any case where personal restraint or imprisonment of the person is alleged, without restriction or limitation. Our present inquiry is, whether it was within the intention of the act of congress of 1789 to clothe those courts with such a jurisdiction. And it seems to the court, in taking the affirmative of this inquiry, we charge on that congress the folly of attempt-

ing to confer original jurisdiction on the supreme court, in palpable conflict with the constitution of the United States. I do not suppose that such a suspicion can attach to the distinguished statesmen who composed that congress. It was the first congress convened after the adoption of the constitution of the United States, and not a few of its most influential members had been prominent in the convention that framed that instrument. Of these men it may be well said, that for sagacity, statesmanship, and profound learning they have had no superiors in any after period of our history, and we should be slow in admitting that they could have sanctioned an intended violation of the constitution. At all events such a conclusion should rest on a firmer basis than a doubtful question of grammatical construction.

But there is no occasion for any inference in the least discreditable to the intelligence or purity of the congress of 1789. No violence was intended, and in my judgment none is committed on the constitution by the clause of the statute under consideration. Its language fairly imports a power in the courts of the United States to grant the writ of habeas corpus and all other writs proper and necessary in the just exercise of their jurisdiction. And I can see nothing in the grammatical construction of the clause that calls for any other sense than I have indicated. There was an apparent propriety in designating the important writs of scire facias and habeas corpus; and then, to avoid prolixity and the useless specification of all the other writs and processes necessary to the salutary exercise of the jurisdiction of the courts, to adopt the comprehensive form of expression, "all other writs." These latter words, by every rule of grammatical construction, are connected with and refer to the writs of scire facias and habeas corpus before named.

There is another consideration in the construction of the statute which is entitled to great weight. As already noticed in the first clause of the section, the power to grant the writ of habeas corpus is to the courts and not to a single judge; while in that clause of the section authorizing the writ "for the purpose of an inquiry into the cause of commitment," any judge of any of the courts is empowered to award it. There is a plain and obvious reason for this distinction. If the power to grant a habeas corpus is given in the first clause of the section only where necessary to the exercise of the jurisdiction of a court, there is great propriety, if not necessity, that the writ should be ordered by the court and not by a single judge. The clause, beyond question, contemplates the grant of the writ for the enforcement of jurisdiction in some proceeding or case pending in the court in which the writ is prayed for. And that court alone, in its capacity as a court, and not a single judge, is best

qualified to decide, judicially, whether the writ is necessary to enforce its jurisdiction. On the other hand, when the great prerogative writ—the writ of liberty—the writ of habeas corpus ad subjiciendum—authorizing an inquiry into the cause of commitment, provided for in the second clause of the statute is referred to, any judge of any of the courts is empowered to grant it. The reason of this is, that when a case of unlawful imprisonment, under color of legal process or authority exists, there is a necessity for prompt and speedy action; and hence the party is entitled to be heard before a single judge, without waiting a regular session of a court, which might be months distant, and at a point remote from the place of the imprisonment of the party applying for deliverance. That this was the writ contemplated by the authors of the constitution in the clause which prohibits its suspension except in certain emergencies, is quite obvious. They could have no reference to the writ as used to relieve from either actual or constructive restraints or imprisonments of the person resulting from the relations of master and servant, guardian and ward, parent and child, or husband and wife. It was doubtless intended to protect against those invasions of personal liberty which are perpetrated under color of legal or official authority. The framers of the constitution had in view those outrages and usurpations which characterized the worst periods in the history of the British nation, by which the personal liberty of the citizen was invaded, from political considerations, but with the forms of legal authority. As a remedy for such abuses of power, and disregard of legal and constitutional rights, the judges of the courts of the United States are invested with the authority to issue the writ of habeas corpus and inquire into the cause of commitment.

And, under the clause referred to, there is no limitation to the power of the judges except that contained in the proviso which prohibits them from granting a habeas corpus where the imprisonment is by state process or under state authority. As before intimated, the numerous authorities cited by counsel refer to cases where the writ has issued under the clause here referred to; and these cases need not therefore be specially noticed, as they have no application to the question under consideration.

It is claimed, however, that there are other cases which sustain the jurisdiction now asserted for this court. The case of U. S. v. Green [Case No. 15,256] has been cited in support of the position assumed by the counsel for the relator. It was a case of habeas corpus, presenting a question as to the rightful custody of an infant daughter, alleged to be wrongfully detained by the grandfather of the child. It is true the writ in that case was allowed by Judge Story, in the circuit court; but it does not appear, that either on the petition for the writ, or upon its return, the question of jurisdiction was presented. And, before any final action by the court, the parties entered into an amicable arrangement, as to the custody of the child, which received the sanction of the court. This can not be claimed as an authoritative decision, on the point now before this court.

It is also insisted that the case of Ex parte Barry, before referred to, is in support of the jurisdiction of this court. The only point decided in that case was, that the supreme court of the United States had no original jurisdiction to issue the writ of habeas corpus prayed for, and therefore dismissed the proceeding. In the opinion by Judge Story, the court say: "Without, therefore, entering into the merits of the present application, we are compelled by our duty to dismiss the petition, leaving the petitioner to seek redress in such other tribunal of the United States as may be entitled to grant it." This is but an intimation that the lower courts might have jurisdiction, but the question did not arise in the case, and can not be claimed as a decision by the supreme court.

The case of U. S. v. Williamson [Case No. 16,726] is also relied on as an authority by the counsel for the relator. This case was decided by the late Judge Kane, of the district court of the United States for the eastern district of Pennsylvania. The circumstances under which the writ issued were briefly as follows: Wheeler, the relator, was the owner of three slaves, who, as he alleged in his petition, were forcibly taken from his possession at Philadelphia by Williamson, and by him were unlawfully detained in custody. The prayer of the petition was, that Williamson might be required to produce the slaves before the court, with the reasons of his claim to detain them. The learned judge held that the court had jurisdiction under the first clause of section 14 of the act of 1789. I do not propose to notice critically the grounds on which he asserted the jurisdiction of the court. For reasons stated before, I am clear in the opinion that the construction given by Judge Kane to the statute in question is essentially erroneous. With all my respect for his legal intelligence and ability, I can not acquiesce in his conclusions. And the authority of his opinion is certainly not strengthened by the fact that no other case has been reported in which this latitudinous claim of jurisdiction has been judicially affirmed.

In at least one case of respectable authority, a contrary doctrine has been strongly asserted. I refer to the case In re Barry [42 Fed. 113], in which Judge Betts, holding the circuit court of the United States for the southern district of New York, refused to grant a writ of habeas corpus in a case, the facts of which were very similar to those now before this court, on the ground of a want of jurisdiction. The case was, substantially, that Barry, an alien, married in

the city of New York; and having lived some years with his wife, and after two children were born, by reason of some unfortunate difficulty between them, they separated, one of the children being in the custody of the father and the other of the mother. In 1844, Barry, for the purpose of obtaining the custody of the child remaining with the mother, filed his petition in the circuit court of the United States for a writ of habeas corpus, alleging a lawful right to the child as the father, and that the child was illegally and forcibly detained by the mother. Judge Betts refused to award the writ, on the ground before stated. I have seen no full report of his opinion, but it is referred to in [Barry v. Mercein] 5 How. [46 U. S.] 103, and from the report it appears that Barry obtained a writ of error from the supreme court, to reverse the judgment of Judge Betts. This writ was dismissed by the supreme court, on the ground that there was no pecuniary amount in controversy, and that the court therefore had not jurisdiction. Two of the points of Judge Betts' decision are stated in the report of that case as follows: "I deny the writ of habeas corpus prayed for, because: 1. If granted, and a return was made, admitting the facts stated in the petition, I should discharge the infant on the ground that the court can not exercise the common law functions of parens patriae, and has no common law jurisdiction in the matter. 2. The court has not judicial cognizance of the matter, by virtue of any statute of the United States."

The conclusions thus stated by Judge Betts accord fully with my judgment. I have before given some of the reasons for the opinion, that the statute does not grant the power claimed for the court in this case. And that view is, I think, decisive of the pending question. But it is contended in argument, that if it should be held that the statute does not confer the power, as a matter of substantive and independent jurisdiction, the writ of habeas corpus is proper as an ancillary process, to enable the court to exercise jurisdiction. If I understand the argument on this point, it is, in substance, that the child who is the subject of this controversy, legally owes labor and service to the petitioner, as her father; that she has escaped from the state of New York, where such labor and service were due, into the state of Ohio, and is subject to reclamation as a fugitive, by the father, under the acts of congress of 1793 [1 Stat. 302] and 1850 [9 Stat. 462]; and that the writ issued in this case is in aid of the jurisdiction of this court, under said acts, and therefore within the scope of the first clause of section 14 of the act of 1789. I shall notice this position very briefly, remarking, in the first place, that it would be, in my judgment, a perverted construction of the acts for reclaiming fugitives from service, to hold that they can have any application to a female child of eight years of age. Such a child, within the contemplation of these statutes, can not be said to owe labor and service to the father. And again, it is clear there has been no such escape as within the purview of these statutes is required, to bring a person within their operation. There must be an escape, implying the will or purpose to escape, which certainly can not be predicated of an infant child. But there is a still more conclusive objection to the construction insisted on. The clause authorizing a habeas corpus in aid of the jurisdiction of a court, clearly contemplates a suit or proceeding in esse, and that such writ is necessary as subsidiary to the exercise of jurisdiction. It would vest the courts with a dangerous amplitude of discretion, if they could use the writ of habeas corpus as an instrument to bring a party within their jurisdiction for an ulterior purpose.

The jurisdiction, then, does not exist on the ground just indicated—and I am equally clear there is no other ground on which it can be sustained. I do not say it is not within the competency of congress to give the power claimed to the courts or judges of the United States. The constitution includes in the grant of judicial power controversies between citizens of different states, but there is no statutory provision which brings the proceeding by habeas corpus within the scope of this provision. Section 11 of the act of 1789 gives to the circuit courts original cognizance concurrently with the state courts, of all civil suits at common law and in equity, where the plaintiff is a citizen of a state other than that in which suit is brought, and the matter in dispute exceeds five hundred dollars. But this does not include a proceeding by habeas corpus, for the plain reason, if there were no other, that the matter in controversy has no pecuniary value, and can not be estimated in money.

It follows, as the result of these views, that this proceeding must be dismissed, for want of jurisdiction. If I entertained a serious doubt on this question, I should hesitate to exercise the power invoked for this court. But, in the light in which I view it, the line of duty is so clearly indicated, that I should be wholly without excuse if I did not follow it. This result renders it wholly unnecessary to express an opinion as to the effect of the record in the proceeding in the state court, or to review the evidence introduced by the parties.